IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **Dominic Young,** | * |
| Plaintiff, *pro se* | * |
| v. | * Civil No. **22-cv-1235-PJM** |
| **National Credit Audit Corp.,** | * |
| Defendants. | * |

### MEMORANDUM OPINION

*Pro se* plaintiff Dominic Young has filed a Complaint (ECF No. 3) naming the National Credit Audit Corporation ("NCAC") as the sole Defendant. Young brings suit under 20 provisions of various federal consumer protection laws, including the Fair Debt Collection Practice Act ("FDCPA"), 15 U.S.C. § 1692-1692p, the Consumer Credit Protection Act ("CCPA"), 15 U.S.C. § 1601(a)-1602(1), the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691, and the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681. Young alleges NCAC is attempting to fraudulently collect a debt using information he did not consent to provide and by reporting false and misleading information to the major credit reporting agencies. NCAC has filed a Motion to Dismiss.

On October 26, 2017, in an application for an apartment, Young provided his driver's identification and social security number to an apartment complex called Villages at Montpelier ("Villages"). ECF No. 3-2 at 11-13. On the same day, Young signed a lease agreement with Villages to rent an apartment for $1345 per month. ECF No. 3-2 at 14-21. The lease was to start on October 26, 2017, and end on August 25, 2018. ECF No. 3-2 at 14.

On July 26, 2019, Young renewed his lease with Villages through September 25, 2020. ECF No. 3-2 at 22. The lease provides that, if the tenant, Young, terminates the lease prior to the stated end date, he will be responsible for paying rent for the remainder of the stipulated term or until the apartment is re-rented, whichever comes first. ECF No. 3-2 at 20. However, the lease also allows the tenant to terminate the lease early if he provides 60 days' notice before moving out and pays a buy-out fee equal to two months rent (here, $2,908). *Id.*

On January 2, 2020, Young gave notice of his intent to terminate the lease and move out of the Villages apartment. ECF 3-2 at 10. On February 28, 2020, he moved out, seven months before the lease was set to end. *Id.* Villages subsequently calculated the amount owed by Young for terminating the lease early and determined that, after subtracting the amount of his security deposit ($520.73), he owed $2,387.27. *Id.* Young did not pay the $2,387.27 and Villages sent the debt to NCAC for collection. ECF No. 8 at 2.

On April 13, 2020, Young received an email from NCAC informing him of the $2,387.27 debt owed to Villages and providing instructions on how to pay the debt. ECF No. 10-1 at 30. The instructions advised Young to use the last four digits of his social security number to access an online account where the debt could be paid. *Id.*

On June 2, 2021, Young sent a letter to NCAC in response to the agency's notice of its collection efforts ECF No. 3-2 at 1. Young disputed the debt and asked for the identity of the original creditor, how the amount was calculated, for NCAC to provide documentation showing Young's agreement to pay the debt, and verification of NCAC's qualification to collect the debt. ECF No. 3-2 at 1. Young also demanded that all further communications from NCAC be in writing. ECF No 3-2 at 2.

NCAC responded with two letters explaining that Young's $2,387.27 debt had been verified with the original creditor, Villages. ECF No. 3-2 at 3, 8. NCAC also enclosed copies of the move out statement, lease agreement, lease application, and lease renewal to show the amount owed to Villages. ECF No. 3-2 at 8 (NCAC stating "I am enclosing ... the documents that we reviewed to verify and validate your debt"); *see also* ECF No. 3-2 at 10-24 (showing Young's move-out statement, lease application, lease agreement, and lease renewal). Young responded, claiming NCAC had violated several federal consumer protection laws by making multiple allegedly false statements in its previous letters. ECF No. 3-2 at 4.

On July 7, 2021, Young filed a complaint with the Consumer Financial Protection Bureau ("CFPB') claiming he was the original creditor, not Villages, and therefore NCAC had violated the FCRA by falsely claiming Villages was the original creditor. The complaint was closed following an explanation from NCAC that this was not so. ECF No. 3-2 at 25-28.

Young thereafter filed suit in with this Court, claiming NCAC owed him $30,000 for 30 violations of federal law. ECF No. 3; *see also* ECF No. 3-2 at 32. On May 27, 2022, NCAC filed a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. ECF No. 7.

Young argues that NCAC violated provisions under the FDCPA, the CCPA, the FCRA, and the ECOA by using his social security card without authorization and by reporting false and misleading information to him and the major credit reporting agencies. ECF No. 3. Specifically, Young claims that NCAC is reporting false information by identifying Villages as the "original creditor." ECF No. 3-1 at 1; ECF No. 10 at 7. Young is under the impression that Villages cannot be the original creditor because they never extended him a line of credit. ECF No. 10 at 7. Rather, it is his belief that, because he provided his social security card and driver's license to Villages for

the purpose of running a credit check, those two documents are "credit cards" under the statutory definition provided in 15 U.S.C. § 1602(l). ECF No. 10 at 5. Because he extended the use of these "credit cards" to Villages, Young considers himself the original creditor. ECF No. 10 at 7. Therefore, Young argues that, because he is the original creditor, not Villages, NCAC is reporting false and misleading information by stating otherwise. ECF No. 3; ECF No. 10 at 5.

Young also argues that NCAC made unauthorized use of his social security card. ECF No. 3; ECF No. 10 at 6 (Young points to email communications from NCAC in which the agency instructs Young to use the last four digits of the social security number to access an online account where the debt can be paid). Young argues that, although he provided his social security number to Villages, he never consented for it to be provided or used by NCAC. ECF No. 10 at 5.

Young also makes several claims suggesting NCAC used threatening and unconscionable means in its attempt to collect the debt. ECF No. 3-1 at 2. He points to two letters from NCAC stating that they are attempting to collect a debt and will report the debt to the major credit reporting bureaus, as well as extracts from his credit reports. ECF No. 3-2 at 9, 14.

Finally, Young alleges NCAC failed its legal duty to provide Young with written notice of his statutory rights under 15 U.S.C. § 1692g as well as to cease all communications with Young per his request. ECF No. 3.

I.

The procedural rules that guide district courts require plaintiffs to set forth factual allegations that make their claims plausible. A motion to dismiss the complaint will be granted where the complaint's allegations do not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This means that a plaintiff's

complaint must present enough facts to substantiate its assertions. The rules do not allow a plaintiff to state, without foundation, that he believes he is entitled to some relief.

It is not enough for a plaintiff to assert a legal conclusion without more; these conclusions "are not entitled to the assumption of truth." *Aziz v. Alcolac, Inc.*, 658 F.3d 388, 391 (4th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Although *pro se* litigants are entitled to special solicitude and courts are to construe complaints by an unrepresented party "liberally," this requirement "does not transform the court into an advocate." *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990). Where no actionable claim is asserted, a complaint will be dismissed.

## II.

At the heart of Young's argument is the mistaken belief that he himself is the original creditor, not Villages. *See e.g.*, ECF No. 10 at 7. The FDCPA defines "creditor" as the "person who offers or extends credit creating a debt *or* to whom a debt is owed." 15 U.S.C. § 1692a (4). Here, Villages is clearly the original creditor to whom, moreover, $2,387.27 is owed.

The lease agreement between Young and Villages stipulated that, to end the lease early without being held responsible for the remainder of the stipulated term, the tenant must (1) provide two months' notice and (2) pay two months' rent. ECF No. 3-2 at 25. Young abided by the first requirement and provided two months' notice before moving out but failed the second by neglecting to pay the mandatory two months' rent. ECF No. 3-2 at 10. Accordingly, as provided in the move out statement, Young owes Villages a debt of $2,387.27. ECF No. 3-2 at 10. Because Villages is the entity "to whom a debt is owed," Villages is the original creditor. 15 U.S.C. § 1692a (4). NCAC therefore violated no federal provision by accurately verifying and reporting Villages as the original creditor.

In addition, NCAC did not report inaccurate information regarding the amount owed by Young to Villages. The move out statement shows that Young owed $2,387.27 upon moving out of the Villages apartment and the credit bureau reports show that NCAC reported that Young owes the very same $2,387.27 debt to Villages. ECF No. 3-2 at 10; ECF No. 3-2 at 29-31. Thus, NCAC did not engage in inaccurate credit reporting; rather, the agency was simply attempting to collect a debt that is specifically provided for in the lease agreement.

Young also argues that NCAC made unauthorized use of his social security number. ECF No. 10 at 5,6. Young relies on 15 U.S.C. § 1602(l), arguing that this social security card is a "credit card" within the definition of the statute. ECF No. 10 at 5. Because NCAC used Young's social security card without explicit permission, Young claims that NCAC made "unauthorized use" of his "credit card" in violation of 15 U.S.C. § 1602(p). ECT No. 10 at 5,6 (citing 15 U.S.C. § 1602(l) to define a social security card as a "credit card" and 15 U.S.C. § 1602(p) for the definition of "unauthorized use").

Young's interpretation of 15 U.S.C. § 1602(l) to include social security cards within the definition of "credit cards" is mistaken. Although a social security card may be used to *identify* a consumer attempting to obtain credit, it exists simply for the "*purpose* of obtaining credit," but it is not itself a credit card. *Washington v. Pac. Credit Exch.*, No. 21-CV-02374-JCS, 2021 WL 5868981, at *2 (N.D. Cal. Nov. 17, 2021), *report and recommendation adopted*, No. 21-CV-02374-HSG, 2021 WL 5865531 (N.D. Cal. Dec. 10, 2021) (specifying that a social security card is not a credit card within the meaning of 15 U.S.C § 1602(l)). Further, under 15 U.S.C. § 1602(p), "unauthorized use" is defined as the "use of a *credit card* by a person other than the cardholder who does not have actual, implied, or apparent authority for such use and from which the cardholder receives no benefit." 15 U.S.C. § 1602(p) (emphasis added). Since the statute

applies only to the unauthorized use of "credit cards" and because a social security card is not a "credit card," NCAC did not violate the statutes.

Young also claims NCAC used threatening and unconscionable methods in attempting to collect the debt, violating 15 U.S.C § 1692f ("a debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt") and 15 U.S.C § 1692d(1) (in attempting to collect a debt, the debt collector may not use or threaten to use "violence or other criminal means to harm the physical person, reputation, or property of any person"). ECF No. 3-1 at 2. Young cites his credit reports from Equifax, Trans Union, and Experian as supposedly showing the unconscionability of NCAC's methods and cites the letters he received from NCAC as showing the agency's threatening methods. ECF No. 3-1 at 2. The Court does not see how any of the language in these communications can be perceived as unconscionable or threatening. ECF No. 3-2 at 3, 8; ECF No. 3-2 at 29-31. As explained, the credit reports simply show that NCAC accurately reported that Young owed a debt of $2,337.27 to Villages. Meanwhile, the two letters sent by NCAC merely notify Young of their collection attempts, instruct him on how to pay the debt, verify and validate the account with the documents provided by Villages. Young, moreover, is simply notified of their report to the major credit reporting agencies. ECF No. 3-2 at 3, 8.

Finally, Young claims NCAC breached several legal duties, including failing to provide written notice of his rights to dispute the debt or to ask the identity of the original creditor in violation of 15 U.S.C. § 1692g(a)(4) and (a)(5), and failing to cease communications in violation of 15 U.S.C. § 1692c(c). ECF No. 3-1 at 2; ECF No. 10 at 25.

Young's claim regarding NCAC's failure to make statutorily mandated disclosures is barred by the FDCPA's statute of limitations. He alleges he received notices from NCAC on

April 13, 2020, May 6, 2020, and August 27, 2020, and each of these emails lacked the mandatory disclosures under 15 U.S.C. § 1692g. ECF No. 10 at 2-3; ECF No. 10-1 at 30-32 (Young's Exhibit N, O, and P which provide copies of the three emails sent by NCAC). However, the FDCPA provides that "claims must be brought 'within one year from the date on which the violation occurs.'" *Bender v. Elmore & Throop, P.C.*, 963 F.3d 403, 407 (4th Cir. 2020) (quoting 15 U.S.C. § 1692k(d)). A "violation" occurs every time "an improper communication, threat, or misrepresentation is made." *Bender*, 963 F.3d at 407. Here, the alleged violations occurred on April 13, May 6, and August 27 of 2020. Young filed his Complaint on September 23, 2021, over a year after each alleged violation. ECF No. 3 at 1 (showing the Complaint was received on September 23, 2021). Accordingly, Young's claim under 15 U.S.C. § 1692g is barred by the one-year statute of limitations set forth in 15 U.S.C. § 1692k(d).

Finally, Young's claim that NCAC violated 15 U.S.C. § 1692c(c) by continuing to send communications after specifically being requested to cease is not supported by the facts alleged. ECF No. 10 at 10; ECF 3-1. Under 15 U.S.C. § 1692c(c), "if a consumer notifies a debt collector in writing that the consumer... wishes the debt collector to cease further communication with the consumer, the debt collector shall not communicate further with the consumer with respect to such debt." In his June 2, 2021 letter to NCAC, Young demands that all future communications from NCAC be in writing. ECF No. 3-2 at 2. He does not request that NCAC cease *all* further communications. *Id.* NCAC cannot be deemed to have violated an order that was never given

## CONCLUSION

For the reason forgoing reasons, Defendant's Motion to Dismiss, ECF No. 7, is **GRANTED WITH PREJUDICE.**

A separate Order will **ISSUE**.

Date: October 19, 2022

_____
PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE